**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 5:11-CR-474-VEH-HGD |
| ) | |
| CRAIG ROWLAND NOWKA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION AND ORDER**

**I.  Background and Procedural History**

The Government suspected that the Defendant, Craig Rowland Nowka ("Nowka"), was dealing in firearms without the license required by Title 18, United States Code, Section 922(a)(1)(A).[1]  As part of their investigation, ATF decided to conduct surveillance on Nowka.  At their request, and without any court order or warrant, Hartselle Utilities Company attached a surveillance camera to a utility pole located in the right-of-way of Nowka's home.  The surveillance camera was left on the utility pole, recording "24/7," for about eight months.  The surveillance camera showed Nowka's back yard and the side of Nowka's residence, including his

---

[1] For a more complete recitation of the facts underlying the Government's suspicion, see the Report and Recommendation, doc. 26, reported at 2012 WL 2862139, at *1-7 (N.D. Ala., May 14, 2012).

driveway and, when the garage door was open and no car blocked the view, the inside of at least a portion of his garage. This was the very same view, although from a higher angle, that any person could have from the public road that ran beside Nowka's house.

ATF eventually obtained a warrant to search Nowka's house. In it, they found multiple firearms. Additionally, despite being advised about his *Miranda* rights, which Nowka acknowledged in writing that he understood, and despite being repeatedly warned that his statements could be used against him, Nowka spoke at length to the ATF agents about his gun collecting "hobby," how often he participated in gun shows, whom he bought guns from, whom he sold guns to, how much money was involved, his knowledge that he did not have a federal firearms license to deal in firearms, his concerns that he might need such a license, and which guns he planned to take to an upcoming gun show to sell at that show.

Nowka now faces a thirteen-count [superseding] indictment. (Superseding Indictment, doc. 22). In Count One, Nowka is charged with willfully engaging in the business of dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A). In Count Two, Nowka is charged with being an Alabama resident who was not a licensed importer, manufacturer, dealer, or collector of firearms and who willfully transferred, sold, traded, gave, transported, and

delivered a firearm to an individual, who also was not a licensed importer, manufacturer, dealer, or collector of firearms and who Nowka knew or had reason to know was not a resident of the State of Alabama, in violation of Title 18, United States Code, Section 922(a)(5). In Counts Three through Thirteen, Nowka is charged with knowingly making false statements with regard to information required to be kept by federally-licensed firearm dealers in that he stated, on ATF Forms 4473[2], that he was the actual buyer of the firearms with respect to which the form was submitted, when, in fact, he was purchasing the firearms for resale.

The case is now before the court on Nowka's Motion To Suppress Evidence and Statements ("Motion," doc. 16), to which the Government has responded (doc. 21), and Nowka's Supplemental Motion To Suppress ("Supplemental Motion," doc. 24), to which the Government has also responded (doc. 25). At the April 25, 2012, evidentiary hearing on the Motion, counsel for Nowka moved to be allowed to supplement his motion to suppress in light of the recent Supreme Court ruling in *United States v. Jones*, __ U.S. __, 132 S.Ct. 945 (2012). Magistrate Judge Davis granted that motion. The Supplemental Motion was filed on May 5, 2012, challenging the search warrant on that ground as well. (Order, doc. 30).

---

[2] Each date on which a Form 4473 allegedly containing the false statement was delivered to the federally-licensed firearms dealer at issue is the subject of a separate count.

In his Supplemental Motion, Nowka complained of the lack of an evidentiary hearing, held "*after*" the Supplemental Motion was filed, on the issue of whether the "pole upon which the surveillance equipment was installed was in fact on Defendant's property." (Objections, doc. 29, par. 6.) (emphasis in original). Nowka asked this court to "remand this issue and require the Magistrate conduct an evidentiary hearing on the issue of whether the pole camera installation and surveillance violated Defendant's Fourth Amendment right to be free of unwarranted searches and seizures." (*Id.*).

On July 11, 2012, the undersigned granted Nowka's request. Specifically, the undersigned stated:

> Assuming without deciding that an evidentiary hearing should have been held, in the interest of developing a full and complete record, the court **GRANTS** Nowka's request and hereby **REMANDS** this case to Judge Davis to hold an evidentiary hearing, <u>limited to "the issue of whether the pole camera installation and surveillance violated Defendant's Fourth Amendment right to be free of unwarranted searches and seizures."</u>

(Doc. 30, p. 3.) (emphasis in original).

On August 21, 2012, Judge Davis held that evidentiary hearing. (Court docket entry dated 8/21/2012). On August 31, 2012, Judge Davis entered his Report and Recommendation that the Motion, as supplemented on the issue of the pole camera installation and surveillance, be denied. (Second R&R, doc. 39). On September 10,

4

2012, Nowka again objected. (Objections, doc. 40). The Government responded. (Response, doc. 40).

The court has reviewed the pleadings, the First and Second R&Rs, the Objections, and the Response, and sets out its findings of fact and conclusions of law below. Based on those findings of fact and conclusions of law, the Motion and the Supplemental Motion are due to be, and hereby are, **DENIED**.

## II. Standard of Review

Under the Federal Magistrates Act, Congress vested Article III judges with the power to authorize a magistrate judge to conduct evidentiary hearings. The relevant portion of the Act is found at 28 U.S.C. § 636. A district court judge may designate a magistrate judge to conduct hearings, including evidentiary hearings, in order to submit proposed findings of fact and recommendations for the disposition of motions. This district has generally referred certain criminal proceedings, including motions to suppress, to its magistrate judges.

Within fourteen days after being served with a copy of the report and recommendation, any party may file written objections to the proposed findings and recommendations. 28 U.S.C. § 636(b)(1)(C). After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify the magistrate judge's report and recommendation. *Id*.; *Williams v.*

*Wainwright*, 681 F.2d 732 (11th Cir. 1982) (per curiam). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. By Ernest S. v. State Bd. of Educ of State of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) (citation omitted). A district judge must review legal conclusions *de novo*, even in the absence of an objection. *See Cooper-Houston v. Southern Ry.*, 37 F.3d 603, 604 (11th Cir. 1994); *Castro Bobadilla v. Reno*, 826 F. Supp. 1428, 1432 (S.D. Fla. 1993), *aff'd*, 28 F.3d 116 (11th Cir. 1994). That said, the court also acknowledges the principle that "[n]either the Constitution nor the statute requires a district judge to review, *de novo*, findings and recommendations that the parties themselves accept as correct." *United States v. Woodard*, 387 F.3d 1329, 1334 (11th Cir. 2004) (citation omitted). Moreover, absent specific objections, there is no requirement that a district judge review factual findings *de novo*. *See Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993) (noting that when a party "did not file specific objections to *factual findings* by the magistrate judge, there was no requirement that the district court *de novo* review those findings") (emphasis in original) (citations omitted).

## III. Issues before the Court

### A. Objections

The only "fact" found by Judge Davis, in either the First R&R or the Second R&R, to which Nowka has objected is Judge Davis's "not making findings of fact and law consistent with his Motions and Objections and the additional facts and points of law therein." (Objections, doc. 40, pp. 1-2; *see also* Objections, Doc. 28. p. 10). Further, Nowka "objects to the ... R&R's legal findings and conclusions within the [Second] R&R, (Doc. 39)." (Doc. 40, p.2.). Thus, it appears that Nowka's objections to legal conclusions are limited to the Second R&R.

### B. Objections to Findings of Fact

First, Nowka appears to object to Judge Davis's failure to find that the "utility pole was located on and within [Nowka's] property." (*Id.*). Second, he appears to object to Judge Davis's failure to find that Hartselle Utilities company had only an easement "to have access to [Nowka's] property **for the specific, sole purpose of maintaining the utility pole**." (*Id.*, p. 2.) (emphasis in original).

The undersigned has reviewed the transcript of the August 21, 2012, evidentiary hearing, as well as the exhibits introduced by the Government and Nowka at that hearing. While the utility pole undeniably "was located on and within" Nowka's property, it was undisputed that the utility pole: (1) belonged to Hartselle

7

Utilities Company; and (2) was within the 50-foot right-of-way[3] which Hartselle Utilities Company permissibly uses to access its utility pole and any items on that pole. Further, it is undisputed that the subdivision plat for the subdivision in which Nowka's residence is located contains dedicated rights-of-way for "streets, alleys, and public places," and that that right-of-way, at the point where the utility pole at issue was located, was 25 feet from the center of the adjacent public road. Finally, it is undisputed that the utility pole at issue was located less than 21 feet from the center of the public road adjacent to Nowka's home. Thus, the undersigned finds no reasons to sustain Nowka's objections to Judge Davis's findings of fact, and those objections are hereby **OVERRULED**.

### C. Objections to Conclusions of Law

As stated above, Nowka's objections to legal conclusions are limited to the Second R&R. That R&R was itself limited to "the sole issue of whether the installation and use of a pole camera ("polecam") on a utility pole outside of defendant's residence involved an illegal search in violation of *United States v. Jones*, ___ U.S. ___, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012)." (Second R&R, doc. 39, p.1; *see also* Order, doc. 30, p.3.).

---

[3] Interchangeably referred to in the hearing as a right-of-way and as an easement, but undeniably established to be a right of way.

Thus, to the extent that Nowka now seeks to expand the scope of his legal arguments, such an expansion is untimely. Further, even considering such untimely arguments on their merits, they are due to be overruled.[4]

1. *Nowka's Argument Based on Trespass*

Nowka's first argument is that Hartselle Utilities Company trespassed on Nowka's property, "including the air space within the curtilage" of that property, and thus, pursuant to *Jones*, the Motion and the Supplemental Motion are due to be granted. This argument fails.

Nowka argues:

> [T]he easement and usage of trade contemplate that the utility company's access to the property would be brief, and again, for the sole and limited purpose of maintaining utility equipment. The easement does not contemplate or authorize the installation and maintainance [sic] of "Big Brother's" continuous spying eye of Nowka's activities on his property. The tresspass [sic] of the pole camera video surveillance was investigatory in nature and fits squarely into the *Jones* analysis, constituting a "search" for Fourth Amendment purposes. *See United States v. Jones*, 132 S.Ct. 945 (2012).

(Doc. 40, p. 5.). Nowka further argues:

> [B]ecause the easement did not authorize the utility company (or law

---

[4] The undersigned will only address the legal arguments that are actually set out in Nowka's objections. Specifically, the undersigned finds that Nowka's objections "to the Magistrate denying his Motions, and ... to the R&R's legal findings and conclusions within the R&R, (Doc. 39)" are wholly insufficient to put the undersigned on notice of any particular error asserted by Nowka. The undersigned will not address such a conclusory and undeveloped "objection."

9

enforcement) to enter his property or curtilage (which includes the air above the ground) for any purpose other than maintaining utility equipment, the R&R should have found that the installation and surveillance of the surveillance camera on a utility pole located within the curtilage of Defendant's residence was a search for purposes of the Fourth Amendment. See discussion in Defendant's Objections (Doc. 29), of *Katz v. United States*, 389 U.S. 347 (1967) and *United States v. Jones*, 132 S.Ct. 945 (2012), regarding whether the installation of the pole camera on Defendant's property constituted a search within the meaning of the Fourth Amendement [sic].

(*Id*., p. 6.). Finally, Nowka:

. . . objects to the [Second] R&R finding that there was no unauthorized physical trespass onto defendant's property, and that he did not have a legitimate expectation of privacy in the pole or the views which the surveillance camera afforded, because the utility truck was parked on a public road and used a "bucket truck" to install the surveillance camera on the pole. (Doc. 39, p. 2) Thus, the R&R improperly found that because the person installing the pole camera did not physically step onto the property grounds, but instead went through the air in a fork lift bucket, hovering over the property, some 20 to 30 feet, that there was no Fourth Amendment violation.

(*Id*.).

Code of Alabama 1975 Sections 35–2–50 and –51 provide the statutory mechanism for subdividing property in Alabama. Section 35–2–50 reads:

Any person . . . desiring to subdivide his lands into lots shall cause the same to be surveyed by a competent surveyor, if not already surveyed, and shall cause a plat or map thereof to be made, showing the subdivisions into which it is proposed to divide the same, giving the length and bearings of the boundaries of each lot and its number; and, if it is the purpose of the owner to divide the lands into town lots, such plat or map shall show the streets, alleys and public grounds and give

10

the bearings, length, width and name of each street, as well as the number of each lot and block. Such plat or map must show the relation of the lands so platted or mapped to the government survey.

Section 35–2–51 reads:

(a) The plat or map having been completed shall be certified by the surveyor, which certificate must also be signed by the owner ... and acknowledged by such owner ... in the same manner in which deeds are required to be acknowledged. The plat or map, together with the certificate of the surveyor and acknowledgment, shall be recorded in the office of the judge of probate in the county in which the lands are situated, in a suitable book to be kept for that purpose ...

(b) The acknowledgment and recording of such plat or map shall be held to be a conveyance in fee simple of such portion of the premises platted as are marked or noted on such plat or map as donated or granted to the public, and the premises intended for any street, alleyway, common or other public use, as shown in such plat or map, shall be held in trust for the uses and purposes intended or set forth in such plat or map.

Government's Exhibit 19/Defendant's Exhibit 2 shows that the recording of the subdivision plat or map within which Nowka's residence is located was in substantial compliance with the requirements of these sections. Thus, the Government has shown that the property where the utility pole is located is within a portion of the subdivision that was validly dedicated to the public. *See Blair v. Fullmer*, 583 So. 2d 1307 (Ala. 1991); *Gaston v. Ames*, 514 So. 2d 877 (Ala. 1987). Nowka failed to show that the publicly-dedicated place where the utility pole was located had been altered or withdrawn. "After there has been a proper dedication to the public, that

dedication is irrevocable and it cannot be altered or withdrawn except by statutory vacation proceedings." *Gaston*, 514 So. 2d at 879 (citation omitted).

"[U]nless expressly restricted, the use of an easement appurtenant is not limited to the owners of the dominant estate, but also inures to the benefit of their tenants, 'servants, agents, or employees in conducting [their] business,' as well as social and business invitees, which includes use by utility workers and 'utility company service vehicles.'" *Bradshaw v. Enterprise Realty, Inc.*, — So.3d —, 2012 WL 1918430, at *6 (May 25, 2012) (Ala. Civ. App. 2012) (internal citations omitted). The 50-foot right-of-way was dedicated, <u>without restriction or reservation</u>, to the <u>public</u>. Thus, although the use of the utility pole for surveillance purposes, as opposed to for the provision of utilities, is a change in kind that <u>might</u> support a theory of trespass if the dedication had been only for utilities, those simply are not the facts of this case. As the utility pole was on a publicly-dedicated space, and as the use of the pole was not shown to have been subject to any restriction, Nowka has failed to show any constitutional violation under his trespass theory.

2. *Nowka's Expectation of Privacy Argument*

Although beyond the scope of his initial objections, Nowka now argues that the installation of a 24/7 surveillance camera "interfered with [Nowka's] . . . right to enjoy his property without his privacy being violated on a 24/7, uninterrupted basis."

(*Id*., p. 4.). However, the evidence is undisputed that what could be seen on the surveillance recording was in no way different (other than angle of view) from that which any person could see from the public street.[5] Nowka was not behind a fence or a gate or any other device which would have obstructed the view of his car in his driveway. There was no expectation of privacy in this area by Nowka. Such a search does not implicate the Fourth Amendment. *See Katz v. United States*, 389 U.S. 347 (1967); s*ee also Florida v. Riley*, 488 U.S. 445 (1989) (holding that there was no search when police observed marijuana in a partially covered building in the defendant's backyard from the vantage point of a helicopter). Simply put, there was no Fourth Amendment search here when officers used the pole camera to observe Nowka's actions in plain view in his driveway. Therefore, Nowka's objections based on his expectation-of-privacy arguments are due to be **OVERRULED**.

### D. Nowka's Arguments Are Futile

As accurately pointed out by Judge Davis in the First R&R, doc. 27:

> . . .even if the evidence obtained from the pole camera were stricken, there was ample evidence to provide probable cause that Nowka was involved in unlicensed sales of firearms in violation of federal law. As noted above, the warrant is sufficiently detailed that a reasonable officer

---

[5] Nowka's argument is totally undeveloped, factually or legally. However, the court is aware that the surveillance camera allowed remote viewers to "zoom in" on what was taking place in public view. Nowka does not cite, and the court is not aware of, any case that holds that it is an invasion of privacy to make a public view clearer or larger.

would have believed, in good faith, that the warrant was valid. Therefore, the search is also valid pursuant to *United States v. Leon* [468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)].

(Doc. 27, p. 11.).

## IV. CONCLUSION

For the reasons set out above, Nowka's Objections are due to be, and hereby are, **OVERRULED**. His Motion and Supplemental Motion are hereby **DENIED**.

**DONE** and **ORDERED** this the ___ day of December, 2012.

                                                        **VIRGINIA EMERSON HOPKINS**
                                                        United States District Judge